**SAPOLIN CO., Inc., v. ANDERSON, Collector of Internal Revenue.**

No. 6698.

District Court, S. D. New York.

Sept. 23, 1931.

Olvany, Eisner & Donnelly, of New York City (by Mark Eisner, of New York City), for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (by Walter H. Schulman, of New York City), for defendant.

RITTER, District Judge.

This action is to recover additional income and excess profit taxes assessed and paid by the plaintiff for the years 1920 and 1921.

Max and Albert Gerstendorfer began business as a copartnership under the name and style of Gerstendorfer Brothers in 1892, and so operated until January 17, 1903, when the business was incorporated under the name of Gerstendorfer Bros. The name of the corporation was afterwards changed to Sapolin Company, Inc., the plaintiff in this cause. The said brothers had developed a

very profitable business in the importing, manufacturing, and selling of paint specialties, specializing in home decorative finishes, such as gildings, enamels, stains, varnishes, bronzing powders, etc.

In 1899, one of the brothers, Max Gerstendorfer, failed in health, and the brothers decided to retire from the business and transfer the business to a corporation, utilizing some of the trained and trusted employees to take over the business. A pre-organization agreement was that the tangible property of the firm was of the value of $100,000, which should represent the capital stock; that the good will of the business was of the fair value of approximately $1,500,000, and was to be paid for in cash through annuities to the brothers and their respective surviving wives. Accordingly, on January 17, 1903, the said corporation was duly incorporated, and the arrangement aforesaid was carried out, as shown by the minutes of the company on that date, which provided that there was to be paid to Max and Albert Gerstendorfer respectively the sum of $900 per week.

The minutes of the meetings of January 17, 1903, and December 10, 1909, and December 30, 1919, together with the testimony of the officers of the company, show that the agreement was as follows: The Gerstendorfer brothers transferred and conveyed by bill of sale all of the property, including patents, copyrights, and good will, to the corporation in consideration of 498 shares each of the 1,000 shares of par value of $100 each of said corporation, which was considered as payment for the tangible property. Approximately $1,500,000, being the estimated value of the good will, was to be paid on the basis of $900 per week to each of the brothers during their respective lives, and, in the event of the decease of either, the amount was to be paid to his surviving wife during her life. At the time of this purchase agreement, Max Gerstendorfer was 42 years of age, and in poor health. His wife was 39 years of age. Albert Gerstendorfer was 40 years old, and his wife the same age. The expectancy of life of these persons was figured at 20 years, and the payments specified were considered to equal the fair value of the good will of the business.

The company acquired complete title to the good will. There was no conditional sale. The payments to the brothers became an absolute liability of the corporation. They were so recognized and paid thereafter and during the years in question. I think the plaintiff's contention that these payments were capital investment is correct.

The Commissioner of Internal Revenue refused to permit the corporation in the years 1920 and 1921 to deduct the payments made from the gross revenue of the corporation as capital investment. The purchase agreement was entered into at a time when, of course, there was no income tax to be considered. The government must take the status of the company's business as it existed at the time the income tax law was enacted. It cannot reach back to 1903 and change the contractual relations of the parties. The contract was legal and fair, and the company obligated itself to pay the sums aforesaid for the good will, which became a most valuable capital asset of the company.

The defendant asserts that the moneys so paid should not be so allowed because they were made indefinitely in future for intangible good will after the title thereto had been acquired, and, further, that under the Revenue Acts of 1918 and 1921 (40 Stat. 1057, and 42 Stat. 227) there is no provision enabling a corporate taxpayer to include in its invested capital good will acquired for cash, and further that plaintiff has not proven that the good will was of an actual value of $1,500,000.

In La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 530, 65 L. Ed. 998, invested capital of a corporation includes whatever is acquired for permanent use in the business, involving "a conversion of wealth from one form into another suitable for employment in the making of the hoped-for gains."

This case considers the definition of "invested" under the war excess profits tax in the Revenue Act of October 3, 1917 (40 Stat. 306, § 207). I think the definition clearly establishes the fact that the money paid for the good will to the Gerstendorfer brothers must be considered as invested capital.

Counsel for defendant rely upon the case of Baker & Taylor Co. v. United States (C. C. A.) 26 F.(2d) 187, 189. The facts in that case are radically different from the facts presented in the instant case. In the cited case was considered an issue of income bonds in purchase of a good will, which were made expressly payable only out of future net earnings, and which were, as the court says, "nothing more than a means for securing a distribution of future earnings to the stockholders."

These income bonds were in fact but a contingent restricted liability, while in the case we are considering the payments were

a fixed liability without reference to earnings.

The evidence shows the company was well able to make the payments. The government has in fact allowed certain parts of the good will payments to be included as invested capital. This partial recognition of plaintiff's contention, to my mind, is in accord with my view that all the payments should be so credited, for under the agreement the payments cannot be partitioned. The payments were not so indefinite as to leave an undefined and uncertain situation. They were to be made for a definite period, and were not in excess of the fair value of the good will, considering the business of the company and the careful consideration of the matter shown in evidence to have been given by the parties in interest.

I do not think the government at this time can disturb the action of the corporation in fixing the terms of the purchase price, as it seems to have been fairly considered and entered into, and the evidence of the company's business since that time is additional proof of this fact.

The plaintiff is entitled to a judgment as prayed.